UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES; WOMEN'S HELP SERVICES D/B/A 1ST WAY LIFE CENTER & FOCUS WOMEN'S CENTER; ROCKFORD FAMILY INITIATIVE; RELEVANT PREGNANCY OPTIONS CENTER, and PRO-LIFE ACTION LEAGUE, on behalf of themselves and their clients, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.: 23-cv-50279 |
| v. | ) ) ) | |
| KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois, | ) ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF JOHN JANSEN**

1.  My name is John Jansen, and I am a Project Coordinator for the Pro-Life Action League. I am over 18 years old and competent to make this Declaration.

2.  On March 31, 2023, I submitted a Freedom of Information Act request to the Illinois Attorney General's Office, a true and accurate copy of which is attached hereto as Exhibit A. I requested three categories of records in that request.

3.  That request noted that, on March 29, the Deputy Attorney General for Policy had testified before the Illinois Senate Executive Committee and had, in her prepared remarks, stated in these or similar words that, "For years our office has received concerning reports about crisis pregnancy centers, aka CPCs, engaging in fraudulent and misleading conduct." She also later

1

stated in her prepared remarks in these or similar words that, "Our office has received complaints that CPCs have used deception . . . ."

4. I therefore requested copies of "each of these referenced reports and complaints received by the Attorney General's Office against so-called 'crisis pregnancy centers' in the past 10 years."

5. I also noted in the request that the Deputy Attorney General had referenced a visit by the Attorney General himself to a Planned Parenthood where he allegedly "witnessed this [deceptive] conduct with his own eyes" and "experienced deceptive crisis pregnancy center tactics firsthand."

6. I therefore requested "any and all photographs, video, audio, communications, notes, or other documents relating to the Attorney General's visit to the Planned Parenthood location referenced in the Deputy Attorney General's prepared hearing testimony on Senate Bill 1909."

7. I finally noted in the request that the Deputy Attorney General had stated that, "We also appreciate the input we've received and incorporated from the Illinois Hospital Association and the Illinois State Medical Society."

8. I therefore requested "all notes, communications, and documents reflecting the referenced input, and any other comments, suggestions, or edits, on Senate Bill 1909 provided by the Illinois Hospital Association, the Illinois State Medical Society, or their representatives."

9. On Friday, April 7, the FOIA Officer for the Attorney General's Office, Matthew Rogina, sent the first in a series of eight correspondences in response to my request. True and accurate copies of these eight correspondences are attached hereto as Exhibit B:

a. The April 7 letter extended the time for the Office to respond because "the requested records have not been located in the course of routine search and additional efforts are being made to locate them."

b. A Friday, April 14 letter, requesting that I permit the Office until April 28 to provide its response.

c. A Monday, April 17 email, following a call I made to Mr. Rogina to discuss his request to extend. In that email, Mr. Rogina stated that "the last of the responsive records came to us late on Friday and early this AM" and that, "As of now, we do not intend to withhold anything although some redactions will be made."

d. A Friday, April 21 letter conveying a first set of documents, totaling about 54 printed pages, and requesting a rolling production until April 28. The letter notes that redactions of personally-identifiable information had been made to the documents, along with noting that the Office was prohibited from disclosing Illinois State Police Law Enforcement Agencies Data System (LEADS) data, unspecified documents provided to the Attorney General by the Illinois Department of Financial and Professional Regulation (IDFPR) in connection with an IDFPR investigation, and a newspaper article.

e. A Friday, April 28 letter conveying a second set of documents, totaling about 147 printed pages, and requesting an extension to May 12 for additional disclosures. The letter notes that redactions had been made to the documents, and that a draft document had been withheld because it expressed opinions or formulated policies or actions.

    f.   A Friday, May 12 letter requesting an extension to May 19.

    g.   A Friday, May 19 letter conveying three photographs, and requesting until May 26 to produce additional records.

    h.   A Friday, May 26 letter stating that my file was now closed and conveying a 15-second video without any spoken audio.

10.    True and accurate copies of the documents, images, and video conveyed to me by Mr. Rogina can be found at https://drive.google.com/drive/folders/15TN8AYOVMvO1Ma-FlTe6adyGZwWkooHz?usp=sharing.[1]

11.    FOIA responses cited in Plaintiffs' contemporaneously filed Verified Complaint and Memorandum in Support of their Motion for a Temporary Restraining Order and Preliminary Injunction are attached hereto as a single exhibit (Exhibit C). These documents are the following:

    a.   Nine (9) abortion facility incident reports and five (5) Illinois police reports about squabbles between pro-life advocates and abortion facility staff, most of which pertained to individuals with unspecified, if any, affiliations. None of the incidents appear to have resulted in any arrests or legal action. Many incidents did not involve the police, while those that did were resolved with individuals complying with laws, either after clarification from police or because police were not correct on the relevant law. (Ex. C at 1-32.) These incidents included:

        1.   A call to an abortion facility in Memphis saying the speaker did not want a new abortion facility in Illinois, and an accompanying police report following up with the caller and requesting that the case be closed. (Id. at 1-7.)

---

[1] There are two .msg files in the 4-21-23 FOIA response—for those two messages, .pdf versions of them are also provided.

2. An anonymous letter saying that the author would pray for the abortion facility staff to stop performing abortions and that "We still love you and Jesus love[s] you to[o]." (Id. at 8.)

3. A pro-life advocate asked to move who produced a tax survey property map to show the boundary of an abortion facility's property, and who voluntarily moved, despite actually being on the public right of way, upon request of local law enforcement. (Id. at 9-11.)

4. An abortion facility staff member who felt intimidated at a local fast food restaurant when an elderly man commented that the abortion facility distributed "medicine that kills babies." (Id. at 12.)

5. Two (2) incidents of protestors allegedly interfering with traffic entering an abortion facility parking lot, with a police report recording that police informed protestors of the FACE Act, and a redacted police report. (Id. at 13-22.)

6. A van alleged to be parked within 100 feet of an abortion facility, in alleged violation of the Carbondale bubble zone ordinance, and a police report recording that the van moved after police used a digital range finder, but later noting that the van returned after consulting with an attorney who determined that the van was actually in compliance with the bubble zone ordinance. (Id. at 23-29.)

7. An arrow found beside an abortion facility staff member's vehicle and an accompanying police report. (Id. at 30-32.)

b. A catalogue of eight (8) isolated incidents about women allegedly being confused by unknown pregnancy centers in unknown cities and states, as apparently reported by the Chicago Abortion Fund, a national abortion advocacy group, without any supporting verification or other substantiating information whatsoever. (Id. at 33-34.)

c. Emails from Illinois Attorney General Senior Policy Counsel Caitlyn McEllis stating that SB1909 is not intended to apply to "legitimate medical providers." (Id. at 35-36.)

5

      d.    An email from one of SB 1909's Senate Sponsors lamenting that crisis pregnancy centers offer free ultrasounds in church parking lots. (Id. at 37.)

      e.    Emails from Planned Parenthood of Illinois Vice President of Public Policy Brigid Leahy complaining to Illinois Attorney General about so-called "fake clinics" for allegedly offering "misinformation" that caused women to "decide" against having abortions at Planned Parenthood in favor of giving birth. (Id. at 38-41.)

12.    Nowhere in these materials is there any indication of any patient ever lodging an actual complaint with the Attorney General against an Illinois pregnancy help ministry, much less for a violation of the Consumer Fraud and Deceptive Business Practice Act.

FURTHER DECLARANT SAYETH NAUGHT.

I, John Jansen, declare under penalty of perjury that the foregoing is true and correct.

_____

Date: _____07/11/2023_____