QUESTIONS FOR NIFLA v. RAOUL HEARING

Do the plaintiffs (limited services pregnancy centers, CPCs or Centers) charge any fees or costs to the individuals that visit their organizations and facilities for the goods or services?

Where do CPC members engage in contact with individuals, on the street, in a structure, in a mobile facility?

When the CPC members do engage in communications with individuals do they speak in private or in public or both or does it depend?

Are non-licensed medical people subject to civil penalties under the Act or just CPCs?

Licensed health care providers are exempt, correct? So, what if a licensed medical professional volunteering for a Center made a false statement, would a Center be subject to liability?

Is a Center only subject to liability for statements made by individuals who are not licensed medical professionals?

Would a person who claimed that fetuses feel pain be subject to penalties under the Act or subject a CPC to penalties?

Would a person who claimed that life begins at conception be subject to penalties under the Act or subject a CPC to penalties?

Would a person who claimed that the Bible says abortion is murder be subject to penalties under the Act or subject a CPC to penalties?

Are hospitals covered by the Act?

Are abortion clinics covered by the Act?

Did the AG or Deputy AG assert that CPCs were already covered by the statute?

    If yes, why was "clarification" necessary?

If so, were hospitals and abortion clinics likewise covered by the statute before the Act was signed?

Despite the Act and the statute, can a hospital or abortion clinic make misrepresentations without being subject to sanctions under the Act or statute? For example, could a hospital or abortion clinic claim that abortions prevent or cure baldness without being subject to SB 1909?

The ACOG asserts that 23%-27% of fetuses are viable at 23 weeks. Could a person make that statement or a CPC make that representation without being civilly prosecuted under the Act?

What if the person or CPC claimed that 23%-27% of fetuses were viable at 30 weeks? (Factually incorrect but a statement that inures to the benefit of pro-choice speakers.)

What if the person or CPC claimed that 23%-27% of fetuses were viable at *about* 20 weeks?

What if the person or CPC claimed that 23%-27% of fetuses were viable at 20 weeks?

What are the "material facts" that cannot be omitted?

The ACOG asserts that fetal viability depends on many complex factors, of which gestational age is only one. If a person or CPC stated that viability percentages but only as it relates to gestational age but did *not* identify *all* other factors, has that person "omitted a material fact"?

If "material facts" are determined on a case-by-case basis, how can a CPC know what it can and cannot say?

Who bears the burden of proving whether a "material fact" is a "fact"?

Can a CPC face liability for telling an individual that life begins at conception?

Can a CPC face liability for telling an individual that life begins at viability?

Can a CPC face liability for telling an individual that life begins at birth?

What sources do CPCs gather medical information about abortions from?

Are limited services pregnancy centers required to be licensed by the state of Illinois?

Can a CPC face liability for *mistakenly* omitting a material fact?

What standard is used to evaluate when a material fact has been suppressed, concealed, or omitted? Are speakers not allowed a mistake?

What does it mean for pro-life literature to be "medically approved"?

NIFLA states that "[m]others considering abortion deserve honest information," if that is its position what is the harm in distributing complete information?

Is abortion safety determined by a subjective or objective standard?

Does "safety" include mental health or just physical safety?

When considering the "safety" of an abortion is only the safety of the mother considered?

If AG Raoul was concerned about disinformation or the withholding of information, couldn't he or Illinois conduct a public awareness campaign?

If AG Raoul took the position that the Consumer Fraud Act applied to CPCs before SB 1909, couldn't his concerns about fraud, deception, and the lack of information be addressed by applying the Consumer Fraud Act without the amendment?

Assuming strict scrutiny applies (a) what is Illinois' "compelling purpose" in SB 1909, and (b) what evidence exists to support that compelling purpose?

The IAGO is the main governmental body in the state that receives consumer complaints. From 2010 to July 1, 2023, how many *consumer* complaints has the IAGO received about CPC for fraudulent, unfair or deceptive practices occurring in Illinois? What did those *consumer* complaints allege?

Paragraph 113 of the Complaint refers to emails from a Senior Policy Counsel for the Attorney General. Who is that person? What did that person mean when that person stated the intent of SB 1909 was that it not be applied to "legitimate, licensed medical providers"? Specifically, what did the word "legitimate" mean? Did it only mean CPCs?

What is a "fake clinic"? If there are "fake clinics" are there "real clinics"? If so, what is a "real clinic"?